# Wasson's Appeal

*Equity—Dissolution of a syndicate—Accounting—Principal and
agent—Exceptions to findings of fact and conclusions of law—Con-
tracts.*

On a bill in equity to compel an accounting, the evidence on the
part of the plaintiff established that he had subscribed certain
moneys to a syndicate organized to purchase the assets of a cor-
poration engaged in the manufacturing of a particular kind of coffee.
It was also proved that the defendants who were to manage the
details of the purchase had failed to carry out their undertaking,
that the corporation had never been bought, and that the purpose
for which the syndicate was formed was abandoned.   No detailed
account was ever rendered by the defendants.   Under such circum-
stances a decree directing an accounting was proper and will be
affirmed.

In such an accounting the burden was clearly upon the accountants to prove proper warrant and authority for the disbursements made or claimed as credits against the moneys received from the subscriber. To do this, it was necessary to prove that he had expressly authorized payment of the expenses for which credit was claimed, or show that they were of a kind and character as were authorized by the agreement to be paid out of the funds received. It was also essential that the expense credits, thus authorized should be proven to have been actually paid, and be confirmed by proper receipts and vouchers.

Argued April 30, 1925. Appeals, Nos. 136 and 137, April T., 1925, by W. W. Wasson and E. L. Wasson, from decree of C. P. Allegheny County, January T., 1922, Sitting in Equity, No. 2836, in the case of Fairene Stone Wilson, Executrix of the last will and testament of H. M. Wilson, deceased, v. E. L. Wasson, W. W. Wasson, W. M. Campbell, Matz Stahl, Albert Gloekler, William Maus, Henry Uhte, H. M. Quinn, Andrew Strank, W. J. Maus, Thomas Doyle, John Niebaum, J. M. Steele and E. F. Hays & Sons. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed with modifications.

Bill in equity for an accounting. Before SWEARINGEN, J.

The facts are stated in the opinion of the Superior Court.

The court directed defendants to file an account. Defendants stating that no money came into their hands, adopted and accepted the account of the treasurer as and for their own account. Plaintiff filed exceptions to accounts. The court entered the following decree:

"And now, to wit, September 30th, 1924, this matter came on to be heard upon exceptions to the accounts of E. L. Wasson, W. W. Wasson and W. M. Campbell, testimony having been taken and the matter having been argued by counsel,

upon consideration thereof, it is ordered, adjudged and decreed as follows:

"1. W. M. Campbell and E. L. Wasson shall jointly and severally pay to Fairene Stone Wilson, executrix of the Last Will and Testament of H. M. Wilson, deceased, the difference between Two Thousand Five Hundred ($2,500.00) Dollars, with interest thereon from December 16, 1919, less Seven Hundred Seventy-five ($775.00) Dollars, with interest thereon from September 19, 1921, the balance, to wit, the sum of Two Thousand Three Hundred and One and 64/100 ($2,301.64) Dollars.

"2. W. W. Wasson shall pay to Fairene Stone Wilson, executrix of the Last Will and Testament of H. M. Wilson, deceased, the difference between Two Thousand Five Hundred ($2,500.00) Dollars, with interest thereon from December 16, 1919, less Seven Hundred Seventy-five ($775.00) Dollars, with interest thereon from September 19, 1921, or the balance, to wit, the sum of Two Thousand Three Hundred and One and 64/100 ($2,301.64) Dollars, without prejudice, however to W. W. Wasson's right of action over against his principals, W. M. Campbell and E. L. Wasson.

"3. The costs of the proceedings, including the former trial, shall be paid by W. M. Campbell and E. L. Wasson, and the costs upon the accounting shall be paid by W. M. Campbell, E. L. Wasson and W. W. Wasson.

Defendants appealed.

*Errors assigned* were various findings of fact and conclusions of law and the decree of the court.

*George D. Wick,* and with him *Reed, Smith, Shaw & McClay,* for appellants.

*Gifford K. Wright,* of *Alter, Wright & Barron,* and with him *James Milholland,* for appellee.

OPINION BY KELLER, J., July 9, 1925:

H. M. Wilson filed a bill in equity against E. L. Wasson, W. M. Campbell and W. W. Wasson, (and certain other persons as formal defendants), praying for an accounting of the money received by said above-named defendants for the uses and purposes of the Wasson-Campbell Syndicate, of which the plaintiff was a subscriber, and an order directing payment to the plaintiff of such sum of money as was found to be due him on such accounting. He died pending the suit, and his executrix has been substituted as plaintiff.

On February 13, 1923, following a hearing on bill, answer and testimony, the court below made certain findings of fact, which have not been assigned as error, and which may be stated in somewhat shortened form, as follows: On or about December 10, 1919, the said E. L. Wasson and W. M. Campbell entered into a written agreement whereby they agreed to create and establish a syndicate for the purpose of purchasing the assets, or a controlling interest in the stock, of a corporation known as Ko-loc Manufacturing Co. engaged in manufacturing a liquid coffee alleged to be free of caffeine. The set capital of the syndicate was fixed in the agreement at $60,000, and it was provided that "each subscriber for shares in the syndicate shall participate in it, in proportion as the amount of each fully-paid in subscription is divisible into the set capital of $60,000." It further provided that when the capital was fully paid, said defendants would incorporate a company under the laws of Delaware to be known as the "Liquid Coffee Laboratories, Inc.," with an authorized capital of $750,000 of eight per cent cumulative preferred stock and 200,000 shares of common stock without par value; that when assignment of the assets or controlling stock interest in the said Ko-loc Manufacturing Co. was made to the

Liquid Coffee Laboratories, Inc., said Wasson and Campbell would obtain as part consideration for the same, for the benefit of the syndicate, a sufficient number of shares of the common stock of the Liquid Coffee Laboratories, Inc., to assure the syndicate of control, and 12,000 shares [$60,000] of said preferred stock, before the final transfer or assignment of the stock of the Ko-loc Manufacturing Co.; that W. W. Wasson should act as treasurer of the syndicate, all withdrawals of funds to be countersigned by W. M. Campbell. The agreement was signed by no one except E. L. Wasson and W. M. Campbell, but W. W. Wasson accepted the position of treasurer and has since continuously acted as such, and still has in his possession moneys belonging to the syndicate. The plaintiff, H. M. Wilson subscribed and paid on December 16, 1919, to the Wasson-Campbell Syndicate the sum of $2,500 in trust for the purposes of the agreement as above recited. E. L. Wasson and W. M. Campbell did not complete the creation and establishment of the Wasson-Campbell Syndicate. The "set capital" of $60,000 was never subscribed nor paid. Neither Wasson nor Campbell paid in anything on account of the capital, but Wasson paid in $1,150 on account of expenses, etc., after the project was abandoned. The purpose for which the syndicate was formed was abandoned, of which plaintiff was not notified, nor did he consent thereto; the Liquid Coffee Laboratories has not been incorporated and there is no intention of doing so; and neither the assets of, nor a controlling interest in the Ko-loc Manufacturing Co. has been purchased nor is there any intention of doing so. No account has been rendered by E. L. Wasson and W. M. Campbell, or either of them to the plaintiff, nor has there been an accounting by W. W. Wasson to the plaintiff for the moneys received and paid by the former as treasurer of the syndicate; that following an action in assumpsit by plaintiff against said three above-named defendants and its withdrawal, $775 was paid plaintiff on September 19,

1921, on account of the moneys paid in by him to said syndicate.

Based on these findings of fact the court below filed, inter alia, the following conclusions of law, none of which are assigned for error: "3d. Under the contract no duty whatever was placed upon the complainant, except to pay the amount he subscribed thereto, and which he has paid to the treasurer named in the agreement. 4th. All the obligations prescribed in the agreement were to be performed by E. L. Wasson and W. M. Campbell, except those imposed upon W. W. Wasson, the treasurer, and the duty imposed upon anyone, who might be admitted as a subscriber, to pay what he had agreed to pay. 5th. E. L. Wasson and W. M. Campbell should account to the complainant for all the transactions of the Wasson-Campbell Syndicate. 6th. W. W. Wasson should account for the moneys which he received and paid as the treasurer of the Wasson-Campbell Syndicate." A decree was entered in accord with said findings and conclusions, which was not appealed from (Act of March 30, 1921, P. L. 60).

Pursuant to said decree all three of the defendants above-named filed what they termed "accounts," and these appeals are taken by the two Wassons from the final decree of the court on the exceptions filed to such accounts. The "accounts" filed by E. L. Wasson and W. M. Campbell respectively were identical and set forth, "That he did not receive or at any time have in his possession any of the moneys of the Wasson-Campbell Syndicate or any of the money of the subscribers thereto." We agree with the learned court below that this was not in any sense an "account," and was not a compliance with the decree of the court above referred to. These two defendants formed the syndicate and were its managers. They assumed certain duties and obligations to the syndicate and those persons who subsequently paid in money to the capital, and in those respects were principals in the enterprise. They chose the other defendant,

W. W. Wasson, to act as treasurer. He was peculiarly
their agent and as against the plaintiff they are respon-
sible for his acts. As founders and managers of the
syndicate they were bound to account fully to the plain-
tiff, in accordance with the decree of the court, for all
moneys paid by those participating in the syndicate to
the treasurer designated by them in their syndicate
agreement.

The account filed by W. W. Wasson, as treasurer, is
not in much better shape. It does set forth on its debit
side the moneys paid in to the syndicate and by whom,
but it neglects to state when these sums were received
by the accountant. It discloses that Campbell has paid
nothing at all, and E. L. Wasson only $1,150, on ac-
count of alleged subscriptions of $5,000 each to the set
capital. The evidence discloses that Campbell went
through the form of giving his check for $5,000 which
was returned to him uncashed; and E. L. Wasson paid
his $1,150 only after the project was abandoned, as a
contribution to the expenses incurred. On the credit
side the account is objectionable in many respects. It
sets forth no dates at all; it contains lumping credits for
office rent, stenographer, telephone, stationery, advertis-
ing, office supplies, attorney #1, attorney #2, and miscel-
laneous, aggregating nearly $1,000, without naming any
person to whom such payments were made, and no re-
ceipts or checks were presented to substantiate the ac-
count, or oral evidence presented to explain them. The
syndicate's business was transacted in W. W. Wasson's
private office but no proof was given of the proportion
of expenses properly chargeable to the syndicate, or the
period of time covered by the payments; though it ap-
pears from the evidence in the case, such as it is, that
the business proposed to be acquired was early found
to be financially a failure, and the plaintiff Wilson was
demanding back his money as early as March 4, 1920.
Alleged credits for "option," "audit" and "Dr. Koch,"
totalling $962.42, were not vouched for nor satisfactorily

explained. It does not appear from the account when these expenses were incurred, but the payment to Dr. Koch seems to have related to a wholly different proposition not embraced in the syndicate agreement and to which plaintiff never assented. Credit for $3,110 is taken for commissions paid to five persons, (W. W. Wasson himself receiving $990), which it was testified by one of the payees represented 15% on the moneys paid in by the subscribers, to the syndicate; but the same percentage seems to have been paid, or charged as an item of expense, on the subscriptions made by the two founders and managers of the syndicate—E. L. Wasson and W. M. Campbell,—and this too although they did not pay in their subscriptions; thus charging the other subscribers $1,500 for the unpaid subscriptions of the originators of the syndicate. Credit is also taken by the treasurer for $2,936.50 repaid other subscribers to the syndicate, representing 77% of the amounts paid in by them; but in this calculation the amounts due, on that basis, from W. M. Campbell and Thomas Doyle ($1,150 and $75 respectively) were considered as cash though not in hand; hence the money admitted to be in the hands of the treasurer, $986.20, is $1,225 short of what his own accounts show he should have, to justify such distribution.

The account shows $9,810 to have been received by the treasurer on account of $22,010 subscribed to the syndicate, and takes credit for $5,062.30 paid out of the funds so received for alleged expenses.

Having admittedly received the money of the plaintiff as a subscription to a syndicate which never became operative because of the managers' failure to perform what they had undertaken to do, and which was abandoned without the consent of the plaintiff, because, it was alleged, the business proposed to be acquired was not successful financially, the burden was clearly on the accountants, these defendants, to prove proper warrant and authority for the disbursements made or

claimed as credits against the moneys received from the plaintiff subscriber. To do this it was necessary to prove that he had expressly authorized payment of the expenses for which credit was claimed or show that they were of a kind and character such as were impliedly authorized by the agreement to be paid out of the funds received; and it was essential that the expense credits thus authorized should be proven to have been actually paid, and be confirmed by proper receipts and vouchers. This burden, as we have seen, the defendants wholly failed to discharge. Their defense was limited to an attempt to prove that at a meeting or meetings of the subscribers at which Wilson was alleged to have been present, the treasurer had presented an account, identical in form with that filed in court, and that it had been agreed to by Wilson; but the court's sixth finding of fact was directly contrary to this proposition: "H. M. Wilson was not present at the meetings of the syndicate where the expenditures of W. W. Wasson, the treasurer, were authorized, nor did H. M. Wilson ever consent thereto otherwise." A careful reading of the evidence printed in the record leads us to agree with the following summary of the court below on this point: "The accountants attempted to prove authority on the part of Mr. Wilson by calling witnesses to show that he was present at meetings where these expenditures were approved. The testimony relative thereto was altogether indefinite and uncertain. No minutes were produced although it was stated that minutes were taken. The main witness in that behalf was Martin Heyl. His testimony was unreliable. It was contradictory and uncertain. When he was pressed, he finally said that all Mr. Wilson did was to raise no objection. When and where this was he was unable to say definitely. Besides, Mr. Heyl was one of the parties who received a large 'lump sum' for doing something, we know not what, as shown by W. W. Wasson's account. In our opinion, this attempt of the accountants was an utter failure. It was not at all suf-

ficient to hold the estate of the decedent responsible for any share of the alleged expenses of the enterprise." In our view of the testimony Martin Heyl was shifty and wholly unreliable as a witness and his evidence is entitled to scant credence.

In the opinion dismissing exceptions to the findings of fact and conclusions of law the court elaborated further on the subject as follows: "In the opinion accompanying the decision, the reasons were stated for holding that the accountants had failed to prove Mr. Wilson had been present at the meetings; and there was no pretense that he had consented in any other manner. There is no necessity for repeating the same. But there was other evidence, to which reference was not there made. Several letters passed between the parties. At least one of the witnesses testified that he thought the first meeting was as early as February, 1920. But none of the witnesses were certain at all—some fixed the time as much later. The first letter was one from Wilson to W. W. Wasson, in which Wilson declined to sign a paper enabling the syndicate to make 'Soluble Coffee'—a new proposition. This letter was dated March 4, 1920. Another letter was written the same day by Wilson to W. W. Wasson, in which the former demanded the return of the $2,500 paid by him to the latter. Then on March 8, 1920, Mr. Wilson wrote the Syndicate, demanding the return of his money and threatening suit if it was not forthcoming. Thereafter, March 10, 1920, the syndicate notified Mr. Wilson that a meeting would be held on March 15th for the purpose of taking up the subject of dissolution. Again on March 12th, Mr. Wilson was notified that the meeting for March 15th had been postponed. Admittedly no meeting of this kind was held until the following August. This was the one at which the court found Mr. Wilson was not present. It is not reasonable that Mr. Wilson was agreeing to the alleged expenditures, shown in W. W. Wasson's account, at the very time he was threatening suit for the return of the

entire amount of money paid by him to the syndicate. Ordinary men do not act that way. If the accountants had produced any checks or receipts, or the bankers upon whom the checks were drawn, or the parties to whom the checks were made or by whom the receipts were given, or even if proper accounts had been filed, then the court might have had some help towards sustaining the contention of the accountants. But not one of either was submitted.....We therefore conclude that no sufficient reason has been assigned why the findings of fact, including the sixth above quoted, should be reversed."

The appellants have not printed as part of the record the letters referred to in the court's opinion, nor in fact any of the exhibits offered in evidence. We are required, therefore, to accept the court's statement of their contents as correct.

On consideration of the whole case we are of opinion that the court was correct in holding the defendants E. L. Wasson and W. M. Campbell liable to the plaintiff as principals for the full amount of his subscription, less the money already paid him on account; and as the defendant, W. W. Wasson, has or should have in his possession sufficient funds of the syndicate to pay the balance due plaintiff that a decree was properly entered against him for its payment. The assignments of error are all overruled. In order to avoid any misconstruction of the decree entered by the court as requiring a double payment of the amount adjudged to be due the plaintiff, and to change the date from which interest is to be calculated, the decree is modified as follows: And now, July 9, 1925 (as of date of September 30, 1924), it is ordered, adjudged and decreed:

(1) That the defendants, E. L. Wasson, W. M. Campbell and W. W. Wasson shall pay to Fairene Stone Wilson, executrix of the last will and testament of H. M. Wilson, deceased, the sum of $2,297.18, being the full amount of said Wilson's subscription paid by him on

560, (1925).]          Opinion of the Court.

account of the Wasson-Campbell Syndicate, with interest from March 4, 1920, less a credit of $775, as of date of September 19, 1921; without prejudice, however, to any right of action of the defendant W. W. Wasson over against his codefendants, W. M. Campbell and E. L. Wasson.

(2) The costs of the proceedings, including the former trial, shall be paid by W. M. Campbell and E. L. Wasson and the costs upon the accounting shall be paid by W. M. Campbell, E. L. Wasson and W. W. Wasson.

As thus modified the decree is affirmed at the costs of the appellants.